```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,

        -against-                    MEMORANDUM AND ORDER
                                     10-CR-674(S-2)(DRH)
TIMOTHY FAISON, a/k/a
"SHABAZ,"

              Defendant.
------------------------------X
A P P E A R A N C E S:

For the Government:
     Loretta Lynch
     United States Attorney
     Eastern District of New York
     Central Islip, New York 11722
       By: Raymond A. Tierney, A.U.S.A.
           Tali Farhadian, A.U.S.A.

For Defendant:
     Timothy Faison, Pro Se
     #76325-053
     Queens Detention Facility
     182-22 150th Avenue
     Jamaica, New York 11413

     Leonard Lato, Esq.
     Stand-by Counsel
     320 Carlton Avenue
     Suite 4200
     Central Islip, New York 11722
```

HURLEY, Senior District Judge

       Presently before the Court is the reconsideration motion of Timothy Faison ("Faison" or "defendant") targeting the April 13, 2012 decision which denied his application under Rules 29, 33 and 34 of the Federal Rules of Criminal Procedure for the vacatur of the jury's verdict of September 21, 2011 or, alternatively, for a new trial.

       Defendant's motion for reconsideration is granted to

the extent that I have reviewed the challenged portions of the April 13, 2012 Memorandum and Order but, having done so, I adhere to the original decision denying the requested post-verdict relief.

## Grounds Advanced in Seeking Reconsideration

Defendant posits that a perusal of the April 13, 2012 decision demonstrates that the "Court didn't consider [his] arguments reasonably . . . . [and that its] assertions regarding certain events during the course of the trial are not accurate." (Mot. For Recons. at 1.) Although the moving papers fall short of being a model of clarity, the gravamen of Faison's complaint appears to be: (1) the federal prosecution was undertaken absent jurisdiction as to Counts One, Three and Four, (2) that Nassau County Detectives Stephen Hoefenkrieg ("Hoefenkrieg") and Daniel DeCastro ("DeCastro") testified as to the nature and weight of the controlled substances charged in those three counts notwithstanding the government's pretrial representation that it did "not intend to introduce any of the laboratory results from Nassau County at trial," (id. at 4), and contrary to this Court's statement in its April 13th decision that the testimony of those witnesses pertained solely to "chain of custody" issues, (id.), (3) because Hoefenkrieg and DeCastro testified about their analyses of the drugs, Faison contends that the government violated its obligations under "Brady for not providing the

qualifications and curriculum vitae of [those] two detectives . . . [as] requested by the defendant [in his discovery demand] dated . . . July 15, 2011," (id.), and (4) I violated my obligations under Federal Rules of Evidence 104(a) and 702 by permitting the two detectives to testify as experts without proper foundations being laid. (Id.)

Discussion

1. Jurisdictional Argument

Faison has questioned the legitimacy of this prosecution from its outset. He moved pretrial to dismiss the indictment on numerous grounds including that the federal prosecution constituted double jeopardy. That effort was unsuccessful. (See Mar. 25, 2011 Tr., 2-11.) And after his conviction, as we know, he sought to have the jury's verdict set aside, with one of the positions advanced being a reconfiguration of his earlier double jeopardy argument, this time presented under the guise of collateral estoppel. Given that the State of New York and the United States are separate sovereigns, i.e. not "the same parties," that argument was also rejected in the Court's April 13, 2012 decision. The current motion for reconsideration followed.

In asking the Court to revisit my determination in April of this year, Faison insists that members of federal law enforcement controlled, or were otherwise actively involved in

the Glen Cove Police Department investigation underlying three counts in the present indictment. Thus, or so the argument continues, defendant's collateral estoppel argument is germane in law and fact, and bars the instant federal prosecution. That argument is flawed because of the absence of evidence to suggest, no less establish, that members of federal law enforcement were working in conjunction with their state counterparts with respect to Faison vis-a-vis Counts One, Three and Four. Indeed, the existing evidence is precisely to the contrary. By way of example, Special Agent Knox credibly, and without contradiction, testified that the federal agents investigating Faison were unaware that he was also being investigated by members of the Glen Cove Police Department until after Faison's arrest by the state officials on June 18, 2010. (See, e.g., Sept. 14, 2011 Tr., 219:2-220:7.)

In sum, defendant's jurisdictional arguments in their various permutations have been addressed and rejected on several earlier occasions. However, I did not previously specifically address defendant's "joint-operation" argument and, as a result, the collateral estoppel issue has been revisited, albeit unsuccessfully from defendant's perspective, for that limited purpose.

2. Testimony of Nassau County Detectives Hoefenkrieg and DeCastro

In order to place the challenged testimony of

Detectives Hoefenkrieg and DeCastro in context, it is necessary to underscore Faison's extraordinary focus at trial on the government's proof as to chain of custody of the drugs implicated in Counts One, Three and Four.

>  (a) Central Role That Chain of Custody
>      <u>Evidence Played at Trial</u>

Defendant's opening statement to the jury was succinct and one-dimensional. After explaining to the jury "that the burden of proof lies with the government," he proffered that "the defendant is prepared to show through the course of this trial that what the government wants to introduce as evidence didn't come from Mr. Faison." (Sept. 13, 2011 Tr., 87:8-12.) Efforts to elicit testimony in support of that theme pervaded Faison's cross-examination of those government witnesses who had any physical contact with the subject controlled substances. And in defendant's Rule 29(a) motion for a judgment of acquittal made at the conclusion of the government's case-in-chief, the following colloquy occurred:

> THE COURT: Mr. Faison . . . do you have any motions to make?
>
> MR. LATO: Would you like me to make it?
>
> MR. FAISON: Yes.
>
> MR. LATO: On behalf of Mr. Faison, he makes a Rule 29 motion for a judgment of acquittal on each of the counts, and that [is] because of the mix-up with respect to the drugs, consistent with his opening statement, the government has failed to make out a case that

>           should go to the jury that the drugs in
>           evidence are in fact his drugs.

(Sept. 19, 2011 Tr., 654:8-18.)

Simply put, the most important contested issue by far at trial involved the chains of custody. Faison's cross-examination repeatedly focused on the fact that the drugs charged in Counts One, Three and Four passed through, and were handled by officers affiliated with the Nassau County Forensic Evidence Bureau ("Nassau County Lab" or the "Lab") prior to being retested at the Federal DEA Northeast Laboratory by Senior Forensic Chemist Cindy Vitale ("Vitale").[1] That contact with the Nassau County Lab was the primary weak link in the chain according to Faison, as evidenced by his argument during summation:

>           Due to these unlawful violations that [have]
>           been going on within [the Nassau County Lab],
>           how can these two former chemists [viz.
>           Hoefenkrieg and DeCastro] testify with surety
>           that which was shown to them in this court
>           wasn't mislabeled, tampered with, exchanged?
>           To find these former chemists' testimony
>           credible will in fact negate . . . the
>           violations that warranted the close of the
>           Nassau County [L]ab.

(Sept. 20, 2011 Tr., 748:8-14.)

While defendant, proceeding pro se, vigorously

---

[1] Government's Exhibit 3, relating to the June 15, 2010 sale by Faison to a DEA informant "didn't go to the Nassau County Lab" (Sept. 19, 2011 Tr., 674:5-8), and was analyzed by DEA Senior Forensic Chemist James DiSarno. (Id. 570:14-574:11.)

challenged the chains of custody throughout the trial, his efforts to call into question the government's overwhelming proof that he transferred <u>something</u> to other individuals as alleged in the relevant counts were meager.  In fact, he elicited testimony that he was in the drug business.  (<u>See, e.g.,</u> Def.'s Cross-Examination of Special Agent Knox, Sept. 14, 2011 Tr., 229:15-24[2]; Sept. 15, 2011 Tr., 388:22 to 389:8; and Sept. 20, 2011 Tr., 753:3-8 (during defendant's summation, he told the jury: "The government's evidence only shows that, yes, in fact, I was in the drug business.  However, I'm not on trial for being a drug dealer, you must understand that I am on trial for four specific crimes which the government must prove beyond a reasonable doubt that which is in their possession came from me.").)  Nor did he endeavor to challenge the prosecution's formidable evidence as to

---

[2]  The cited testimony from Faison's cross-examination of Knox reads as follows:

> Q: The first question is: How did you become acquainted with me?  How did your investigation start with Mr. Faison?
>
> A: In early 2010 I had a confidential informant named Amin Alfred.  He told me that his brother knew a person named Shabaz, and that that individual sold drugs, and that he could possibly be introduced to him to purchase drugs.
>
> And I later was able to identify the individual as yourself, Timothy Faison.

(Sept. 14, 2011 Tr., 229:15-24.)

the nature and amount of the drugs as testified to by the DEA chemists. Instead, to partially reiterate, his efforts mainly focused on the chain of custody as to the various drugs produced as a result of the Glen Cove Police Department's investigation. The prosecution, he said, failed to establish that the drugs analyzed as to Counts One, Three and Four came from him.

Against the above backdrop, attention will now be directed specifically to the testimony of Hoefenkrieg and DeCastro.

> (b) Synopsis of the Testimony of Hoefenkrieg and DeCastro, Including Their Testimony About the Nature and Weight of the Drugs Each Analyzed

Hoefenkrieg was employed by the Nassau County Lab in 2010, performing tests to determine the chemical composition and weight of suspected illegal substances. During his direct examination by the government, he detailed his involvement in the chains of custody pertaining to the substance charged in Counts Four (the March 2, 2010 sale), and Count One (the drugs recovered at the time of Faison's arrest on June 18, 2010 by members of the Glen Cove Police Department). During Faison's cross-examination of Hoefenkrieg, Faison primarily targeted the witness's involvement in the chains of custody as to those drugs, as well as the problems which led to the Lab's closure.

The next witness called by the government was DeCastro. He, like Hoefenkrieg, was employed by the Lab in 2010 in a

position akin to that of Hoefenkrieg. In that capacity, he handled the substance which was the subject of Count Three (the March 10, 2010 sale). His testimony, both on direct and cross, involved similar lines of inquiry to those pursued with Hoefenkrieg.

However, the questions asked by the government of these two detectives went beyond simply asking about their physical contact with the drugs. The prosecutor also elicited testimony from both witnesses as to the nature and weight of the substances they handled based on their analyses. That additional evidence was clearly relevant as bearing on the issue of whether the substances that Vitale ultimately analyzed were, in fact, the drugs attributed to Faison consistent with the requirements of Rule 901(a) of the Federal Rules of Evidence.[3] Indeed, had the drugs been identified by either Hoefenkrieg or DeCastro to be of a different nature (e.g., marijuana instead of cocaine base[4]) or weight (allowing for any amounts consumed during the testing process), such discrepancies presumably would have been fatal to

---

[3] Rule 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. Rule Evid. 901(a).

[4] The drugs analyzed at the Nassau County Lab were identified simply as cocaine, not cocaine base, even though the indictment speaks of the latter. However, as DeCastro explained, the Lab did not differentiate between powder cocaine and cocaine base. (Sept. 15, 2011 Tr., 503:15-17.)

the prosecution's case.

Moreover, had the detectives simply testified about the part each played in the chains of custody of the drugs, the jury would have been left to speculate as to whether the substances transferred by Faison were "fake" as he endeavored to suggest on multiple occasions during cross-examination of government witnesses. (See, e.g., Sept. 14, 2011 Tr., 245:2-9; id. 329: 11-25; id. 330:18 to 331:24; id. 339:3-19.) The plausibility of the "mix-up" argument at the Lab, at least after the testing by Hoefenkrieg and DeCastro, is diminished to the extent that the results of the Lab analyses dovetail with the conclusions reached at the DEA Northeast Laboratory.

In sum, the testimony of Hoefenkreig and DeCastro about the nature and weight of the drugs each handled was germane and appropriately admitted for chain of custody purposes.

> © Absence of an Objection at Trial to Hoefenkrieg's and DeCastro's Testimony as to the Nature and Weight of the Drugs, and Defendant's Concomitant Rule-Based Arguments

Initially it warrants mention that the government's pretrial representation that it "[did] not intend to introduce any of the laboratory results from Nassau County at trial," (Aug. 5, 2011 Letter at 1), was made in response to a discovery demand seeking "Nassau County Lab reports" and related materials. (Id.) Viewed in that context, the government's actions at trial were

arguably not at odds with its August 5th representation in that the prosecution never sought to introduce the Nassau County Lab report into evidence. But, more importantly, the Lab results were properly placed before the jury as bearing on the hotly-disputed chain of custody issues.

In any event, Faison did not object at trial to the testimony which he now targets in his motion for reconsideration. Had he objected, I would have overruled the objection given the testimony's significance as to the chains of custody issues. Moreover, had my attention been focused on the government's statement of August 5th – either <u>sua</u> <u>sponte</u> or by counsel – I would have given a limiting instruction to the jury to the effect that the information was being received for chain of custody purposes but not as to the question of whether the drugs purportedly transferred by the defendant were, in fact, cocaine base. But Faison remained silent, as did the Court. However, it is axiomatic that "[a] defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure. Nor does the Constitution require judges to take over chores for a <u>pro</u> <u>se</u> defendant that would normally be attended to by trained counsel as a matter of course." <u>McKaskle v. Wiggins</u>, 465 U.S. 168,183-84, 104 S. Ct. 944 (1984).

By way of concluding this point, defendant's efforts to derail his conviction based on the arguable disconnect between

-11-

the government's discovery response and the evidence elicited by the prosecution at trial from Hoefenkrieg and DeCastro is found to be without merit.

Similarly unavailing are defendant's arguments based on Federal Rules of Evidence 104(a), 702, and Federal Rule of Criminal Procedure 16 given that the two detectives testified, absent objection, not as experts per se, but as chain of custody witnesses. That being the case, none of the cited rules come into play. Even if, arguendo, the situation were otherwise, the claimed violations would not warrant the post-verdict relief sought.

In reaching the above conclusions, I considered the following excerpt from the prosecutor's summation, although not raised by defendant:

> [W]e didn't even ask you to rely on the Nassau County Lab's testing, although I submit you could have and you can if you want to. Instead, we gave you the expert analysis of DEA chemists.

(Sept. 20, 2011 Tr., 730:1-4.)

This tangential suggestion to the jury probably would have been better left unsaid even though the predicate testimony was received without objection. However that brief aside concerning the use that could be made of the Lab results during an otherwise on-target summation falls far short of approaching the level necessary to justify a new trial in "the interest of

justice."  Fed. R. Crim. Proc. 33(a).[5]

## Conclusion

For the reasons indicated, defendant's motion for reargument has been granted to the extent that I have revisited the challenged portions of the April 13, 2012 Memorandum and Order, but, having done so, I adhere to the original determinations.  Which is to say, "I [am] satisfied that competent, satisfactory and sufficient evidence in this record supports the jury's finding that this defendant is guilty beyond a reasonable doubt."  United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992).  As a result, and given that Faison's

---

[5] Defendant's original motion for post-verdict relief was made pursuant to Fed. R. Crim. Proc. 29, 33 and 34.  However, the current motion for reconsideration, setting aside Faison's jurisdictional argument, implicates only Rule 33 (entitled "New Trial").

jurisdictional arguments lack merit, his convictions will stand as returned by the jury on September 25, 2011.[6]

SO ORDERED.

Dated: July 30, 2012
Central Islip, New York

_____/s/_____
DENIS R. HURLEY, U.S.D.J.

---

[6] The Court learned on July 20, 2012 that Faison has filed another post-verdict motion, this one via a letter dated May 21, 2012, in which he seeks a new trial pursuant to Federal Rule 33 of the Federal Rules of Criminal Procedure based "on new[ly] discovered evidence of perjury and false evidence giv[en] by the government's witness[es]." (Def.'s May 21, 2011 Letter at 1, docketed on 7/23/2012 as Docket Entry # 110.) That application is still in the process of being briefed by the parties and will be addressed in a subsequent memorandum and order.