```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA,

        -against-                    MEMORANDUM AND ORDER
                                     10-CR-674(S-2)(DRH)
TIMOTHY FAISON, a/k/a
"SHABAZ,"

                Defendant.
-------------------------------X
A P P E A R A N C E S:

For the Government:
    Loretta Lynch
    United States Attorney
    Eastern District of New York
    Central Islip, New York 11722
      By: Raymond A. Tierney, A.U.S.A.
          Tali Farhadian, A.U.S.A.

For Defendant:
    Timothy Faison, Pro Se
    #76325-053
    Queens Detention Facility
    182-22 150th Avenue
    Jamaica, New York 11413

    Leonard Lato, Esq.
    Stand-by Counsel
    320 Carlton Avenue
    Suite 4200
    Central Islip, New York 11722
```

HURLEY, Senior District Judge

   Presently before the Court is the third reconsideration motion of Timothy Faison ("Faison" or "defendant") seeking either the vacatur of the jury's verdict of September 21, 2011, or, alternatively, a new trial.[1] Specifically, he now seeks

---

[1] The defendant's current motion was made by letter dated May 21, 2012 and docketed on July 23, 2012. In reaching its decision (as set forth in the text infra), the Court has considered, inter alia, the May 21st letter, with attachments,

"pursuant to Rule 33 of the Federal Rules of Criminal Procedure . . . a new trial based on new[ly] discovered evidence of perjury and false evidence giv[en] by the government's witness, including new[ly] discovered evidence on the findings of the Nassau [County] Lab along with Brady violation[s] and prosecutorial misconduct as well." (Def.'s May 21, 2012 Mot. at 1.) These arguments will be discussed seriatim.

<u>Purported Prejury by DEA Chemists</u>

As to the perjury-based ground urged by Faison, he proffers that "documented evidence . . . from the [Federal DEA] Northeast Lab[oratory] . . . clearly shows that Senior Forensic Chemist Cindy Vitale [("Vitale")] is the analyst for Exhibit 3 under the case [number] C5-08-0055 not James DiSarno [("DiSarno")]." (<u>Id.</u> at 2.) From that, he argues that "DiSarno committed perjury about . . . drug Exhibit # 3" when he testified that he was the forensic chemist who performed the analysis. (<u>Id.</u>)

In support of his position, Faison has attached exhibits to both his original motion and reply papers. Those exhibits are difficult to understand in part because (1) portions have been redacted, and (2) the government elected not to address defendant's argument as to this point beyond mentioning its

---

along with the government's July 24, 2012 letter in opposition as well as defendant's reply of July 30, 2012.

existence. (See Gov't's July 24, 2012 Opp'n at 2.) In any event, one email sent from DEA Special Agent Scott Knox ("Knox") to two assistant United States attorneys formerly assigned to the prosecution of the case, at 11:11 a.m. on August 4, 2011, reads: "Be advised that Exhibits # 1 thru 8 do not apply to [Redacted] FAISON." (See Def.'s Reply at second unnumbered page after "Exhibit A".) Moreover, Exhibit A itself, dated August 2, 2011, includes a series of "Exhibit numbers" (viz. "1, 2, 3, 5, 6, 7, 8, 9, 10.01, 10.02, 10.03, 11, [and] 12") followed by the identification of "Senior Forensic Chemist Cindy Vitale" as the "Analyst[]," presumably of the controlled substances involved.

As best I can decipher, Faison maintains that based on the foregoing, Vitale, not DiSarno analyzed Trial Exhibit 3, i.e. the controlled substance that the government maintains defendant sold as alleged in Count Two of the indictment. Therein lies the purported perjury and prosecutors' concomitant complicity in knowingly providing false information to the jury. And beyond that, defendant posits, what "Cindy Vitale analyzed" was "not the exhibit under said case # C5-08-0055"; i.e. the drugs corresponding to Count Two, but rather drugs from some other case. (Def.'s May 21, 2012 Mot. at 2.)

The evidence adduced by the prosecution at trial indicated that Vitale analyzed the following controlled substance: (1) Trial Exhibit 1, that being the drugs sold by

Faison on March 2, 2010 as alleged in Count Four, (2) Trial Exhibit 2, corresponding to the sale by Faison on March 10, 2010 as alleged in Count Three, and (3) Trial Exhibit 4, pertaining to the controlled substances possessed by Faison at the time of his arrest on June 18, 2010 as alleged in Count One.[2]

The prosecution's proof further indicated that DiSarno analyzed the controlled substances associated with the June 15, 2010 sale by Faison to a DEA informant as charged in Count Two. Those drugs were marked and received into evidence as Exhibit 3. As will be recalled, the identity of the DEA chemist who analyzed Trial Exhibit 3 is the primary focal point of Faison's perjury accusations.

If the exhibit numbers utilized at the trial corresponded to the exhibits numbers utilized at the DEA Northeast Laboratory with respect to the drugs which are the subjects of Counts One, Two, Three and Four, defendant's argument would have merit. By way of an example of the facial plausibility of the position urged by Faison, consider the August 2, 2011 Memorandum from the Northeast Laboratory Director to Knox which lists "Vitale" as the "Analyst[]" for Exhibit "3." (See Def.'s Reply Ex. A.) Moreover, the previously mentioned August

---

[2] To the extent it is difficult to recall which Trial Exhibit corresponds to which Count, see Assistant United States Attorney Farhadian's cross-examination of Agent Knox at pp. 672-73 for a partially helpful synopsis.

4, 2011 email from Knox to members of the prosecution team indicates that Exhibit "3" "do[es] not apply to [] FAISON." (See Def.'s Reply at second unnumbered page after Ex. A.)

The implicit assumption underlying defendant's argument, however, is fundamentally flawed in that the exhibit numbers utilized by the laboratory for its purposes are not necessarily synonymous with the exhibit designations employed at trial. That conclusion is evident from a review of some of laboratory reports contained in the "3500 material"[3] furnished to the defendant prior to the trial. For example, the government's pretrial Exhibit 3500-CV-1 is a report from the Northeast Laboratory indicating that Vitale on June 3, 2011 determined that a substance submitted to her for analysis under "Lab No. 2215895" and "CASE NUMBER:C5-08-0055" was "cocaine base" with, inter alia, a gross weight of "76.1g." (Gov't's Pretrial Ex. 3500-CV-1.) Significantly, the Laboratory "Exh. No." assigned to that analysis was "12," (id.), while the corresponding trial exhibit number was Exhibit 1. (See Sept. 19, 2011 Tr. at 542:3 to 547:23 (demonstrating that Laboratory Exhibit 12 and Trial Exhibit 1 pertain to the same item of evidence, the drugs charged in Count Four).)

But while a laboratory exhibit number often differs

---

[3] Referring to 18 U.S.C. § 3500, entitled "Demands for production of statements and reports of witnesses."

from the exhibit number assigned at trial for the same item, sometimes the designations are the same. Such is the case here as to Trial Exhibit 3 (again, pertaining to Count Two), and laboratory "Exh. No. 3." (See Gov't's Pretrial Ex. 3500-JD-1.) That both exhibit numbers pertain to the controlled substance which is the subject of Count Two is clear in that the gross and net weights of the analyzed cocaine base, along with the other testing results reported in the laboratory report, dovetail precisely with the trial testimony of DiSarno. (See Sept. 19, 2011 Tr. at 571:15 to 572:25.)

It also appears, however, that the substance analyzed by DiSarno as reflected in Laboratory and Trial Exhibits 3 differs from the Exhibit 3 referenced in Exhibit A to Faison's reply papers in that the former bears the laboratory number "208149," i.e. a number absent from the listing of controlled substances tested by Vitale. (See Def.'s Reply, Ex. A.)

To partially reiterate, it is apparent at this point in the analytical process that (1) a laboratory exhibit number often does not correspond with the trial exhibit number assigned for that particular item (although it may, presumably due to happenstance), and (2) different DEA chemists may receive items marked with the same exhibit numbers but with different laboratory and other identifying numbers signifying different pieces of evidence being submitted for testing. Which is to say,

and prescinding for the moment from a discussion of the August 4th email, Faison's argument that, for some unexplained and seemingly unexplainable reason, DiSarno falsely claimed he analyzed Trial Exhibit 3 whereas his fellow DEA Senior Chemist Vitale actually did so, falls far short of being persuasive.

But how about the August 4, 2011 email?  On that date at 11:11 a.m., Knox emailed the then prosecutors advising them that "Exhibits # 1 thru 8 do not apply to [Redacted] FAISON." (Def.'s Reply at second unnumbered page after Ex. A.)  If that communique pertains to Vitale's analyses, it is of no significance because her analysis of the drugs implicated in Counts One, Three and Four all had laboratory exhibit numbers outside that range.  (See Gov't's Pretrial Ex. 3500-CV-1 (laboratory exhibit # 12), Gov't's Pretrial Ex. 3500-CV-2 (laboratory exhibit #s 9, 10.01, 10.02 and 10.03), and Gov't's Pretrial Ex. 3500-CV-3 (laboratory exhibit # 11).)[4]  However, if it applies to exhibits tested by DiSarno, then the testing of Laboratory Exhibit 3, which is also Trial Exhibit 3, was of a substance "not appl[icable] to FAISON."  (See Def.'s Reply at

---

[4] The contents of each of the government's 3500 pretrial exhibits mentioned in the text was placed in evidence at the trial via the testimony of either Vitale or DiSarno.  For 3500-CV-1, see September 19, 2012 Tr. at 542:3 to 547:17; for 3500-CV-3, id. at 547:24 to 552:6; for 3500-CV-2, id. at 552:14 to 561:4; and for 3500-JD-1, id. at 570:14 to 574:11.

second unnumbered page after Ex. A.)  The question then is whether Knox's emailed admonition to the prosecutors pertained to exhibits being analyzed by Vitale and/or by DiSarno.

Based on the memorandum and emails submitted by Faison, it seems that the exclusion of Laboratory Exhibits "1 thru 8" relates solely to the multiple tests performed by Vitale.  The likely scenario gleaned from a reading of those materials is as follows: on August 4, 2011, at 10:23 a.m., Amia Serrano ("Serrano"), a Program Assistant at the DEA Northeast Laboratory sent an email to Knox.  The email has a subject line that reads: "[Redacted] ex. 1-3 & 5-12."  The text of the email contains the following message: "As requested in the Notification of Disclosure letter, lab reports for the subject case are enclosed."  The same day, at 11:10 a.m., Knox forwarded this email and its attachments to the two prosecutors then handling the case, along with the following message: "Not sure if you requested these – see below and attached.  Apparently the DEA Lab received a 'Notification of Disclosure' letter(?)." One minute later, at 11:11 a.m., Knox forwarded the same email and attachments to the same prosecutors, with the following statement: "Be advised, Exhibits #1 thru #8 do not apply to [Redacted] FAISON."  (<u>See</u> Def.'s Reply at second & third unnumbered pages after Ex. A.)  It seems fairly certain, at least on the information submitted, that the laboratory reports sent by

Serrano in her August 4, 2011, 10:23 a.m. email to Knox are the same laboratory reports referenced in the Notification of Disclosure Materials memorandum dated August 2, 2011, i.e. "Exhibit A" to Faison's reply submission.  Thus, I note that Serrano's email was sent to Knox on August 4, 2011, two days after the date that appears on the Notification of Disclosure Materials memorandum.  Moreover, both Serrano's email and the Notification of Disclosure Materials memorandum are addressed to Knox's attention.  Furthermore, the exhibit numbers in the subject line of Serrano's email (i.e., "ex. 1-3 & 5-12") correspond to the exhibit numbers listed on the Notification of Disclosure Materials memorandum (i.e., "Exhibit numbers: 1, 2, 3, 5, 6, 7, 8, 9, 10.01, 10.02, 10.03, 11, 12.")  And, as explained earlier, the Notification of Disclosure memorandum apparently only concerned drugs tested by Vitale.  To the extent that is true, as I suspect it is, there is nothing to suggest that the analysis of Trial Exhibit 3 was conducted by anyone other than DiSarno or that the substance analyzed was sold by anyone other than Faison.  However, given Faison's pro se status, viewed in conjunction with the disjointed nature of the proof presently before me on the subject, I am not in a position to rule on this issue absent hearing from the government and possibly receiving further input from defendant.  Accordingly, the government is directed to have Knox, or another individual with first hand

information, in Court on the scheduled sentencing date of September 7, 2012, to explain via sworn testimony – subject to cross-examination – the interrelationship, if any, between the subject exclusionary language and the testing said to have been conducted by DiSarno of the crack cocaine underlying Count Two. Following receipt of such additional, hopefully clarifying information, the Court will issue a bench decision concerning Faison's perjury-based ground for a new trial.

>           State Inspector General Biben's November
>           2011 Report Regarding the Nassau County
>           <u>Police Department's Forensic Evidence Bureau</u>

Faison's argument that DEA Chemists Vitale and DiSarno provided perjured testimony at trial is directed primarily, if not exclusively at his conviction under Count Two. His reliance on the State Inspector General's investigation of the Nassau County Police Department's Forensic Evidence Bureau ("Nassau County Lab") seeks to call into question the legitimacy of his convictions under Counts One, Three, and Four.

As an initial matter, I note that the State Inspector General's November 2011 Report ("Report") post-dates Faison's September 17, 2011 conviction. As a result, his citing of the Report as "newly discovered evidence" (Def.'s Reply at 3) is problematic. <u>Cf.</u> <u>Strobl v. N.Y. Mercantile Exch.</u>, 590 F. Supp. 875, 878 (S.D.N.Y. 1984)("It is beyond peradventure that 'newly discovered evidence refers to evidence in existence at the time

of the trial(. . . .'"), aff'd 768 F.2d 22 (2d Cir. 1985). But beyond that, the substance of the Report is consistent in large measure with the points that Faison underscored during the trial. Indeed, the main thrust of his defense was that the government's proof necessarily fell short of the mark given that the drugs ultimately analyzed by Vitale passed through the Nassau County Lab, thereby, or so the argument continues, significantly compromising the chains of custody. The jury, however, as evidenced by its verdict, rejected that argument, finding that the government had established beyond a reasonable doubt that the drugs analyzed at the DEA Northeast Laboratory were, in fact, attributable to Faison. Faison has failed to demonstrate why that conclusion should be set aside based on the Inspector General's Report.

Faison also raises other arguments in seeking to vacate his conviction and obtain a new trial, including purported discovery abuses by the government and prosecutorial misconduct. As to the latter subject, it appears that the misconduct argument is tethered to the perjury claim and is, therefore, dependent on the outcome of the hearing to be held on September 7, 2012. Regarding Faison's discovery claims as to DiSarno, the government reports that "[o]n September 5, 2011, before Mr. DiSarno's testimony, [it] notified the defendant of Mr. DiSarno's testimony as an expert witness and provided his credentials." (Gov't's

July 24, 2012 Opp'n at 2.)  That assertion by the government stands unrebutted in Faison's Reply.

CONCLUSION

For the reasons indicated, defendant's application for a new trial based on the grounds advanced in this, his third post-verdict motion, are denied, except to the extent that his perjury-based claim will be the subject of a hearing to be held on September 7, 2012.  At this juncture, of course, the results of that hearing are not known.  Nonetheless, both parties are directed to be ready to proceed to sentence on that date in the event that portion of Faison's application is rejected.

The foregoing constitutes the decision and order of the Court.

SO ORDERED.

Dated: Central Islip, New York
       August 28, 2012

                    _____/s/_____
                    DENIS R. HURLEY, U.S.D.J.